IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MAYTAG CORPORATION, et al., | |
|     Plaintiffs, | |
| vs. | No. 4:08-cv-00291 – JEG |
| INTERNATIONAL UNION, UNITED AUTO-MOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., | **O R D E R** |
|     Defendants. | |

This matter now comes before the Court on a Motion to Certify Class brought by the Plaintiffs Maytag Corporation (Maytag) and Whirlpool Corporation (Whirlpool) (collectively, the Company) pursuant to Federal Rule of Civil Procedure 23.  Defendants International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW), and UAW Local 997 (Local 997) (collectively, the Union) resist.  Also before the Court is the Company's Motion for Judicial Notice, which the Union also resists.  The Court held a hearing on the motions on May 6, 2010.  Attorneys Douglas Darch and Deborah Tharnish represented the Company; attorneys Robert Seltzer (Mr. Seltzer) and Mark Hedberg (Mr. Hedberg) represented the Union.  The individually named defendants have not appeared in this case.  The matter is fully submitted and ready for disposition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

Maytag operated a manufacturing facility in Newton, Iowa.  The Union represented the production and maintenance employees at the Newton facility for purposes of collective bargaining since approximately 1971.  Consequently, Maytag and the Union entered into a series of

---

[1] The background of this case has been previously set out in the Court's February 11, 2009, Order (Clerk's No. 63) and June 24, 2009, Order (Clerk's No. 75).  However, the Court herein fully sets forth the facts relevant to the discussion of the pending motions.

collective bargaining agreements (CBA).  The CBAs consisted of a main agreement, supple-
mental agreements covering health insurance and other insurance benefits for employees and
retirees, and various other documents.

Whirlpool acquired Maytag on or about May 31, 2006, and, as part of the acquisition,
assumed the then-effective CBA entered into by Maytag and the Union on July 5, 2004 (the 2004
Maytag CBA).  After the acquisition, the Company provided retiree medical benefits to
Maytag's Newton retirees based on the benefits schedule referenced in the 2004 Maytag CBA.

The 2004 Maytag CBA remained in effect until July 31, 2008, and was set to automatically
renew unless one of the parties to the agreement gave notice of its intent to change the terms.
Accordingly, prior to July 31, 2008, the Company gave notice of its intent to change the terms of
the 2004 Maytag CBA and bargain for new terms.  During a collective bargaining session with
the Union on or about July 1, 2008, the Company proposed a modification to retiree benefits for
Maytag's Newton retirees.  The proposed modification included terminating the Maytag Group
Health Plan (the Maytag Plan) on January 1, 2009, and enrolling all current and future Newton
retirees in the Whirlpool Corporation Group Benefit Plan (the Whirlpool Plan).  The Union
refused to bargain over the proposed modifications and took the position that the Company could
not modify the retiree benefit schedules in the 2004 Maytag CBA.

On July 24, 2008, the Company filed this class-action declaratory judgment complaint (the
Iowa lawsuit) in anticipation of its modification to the retiree benefits for Maytag's Newton
retirees and named the Union and three individual retirees as defendants.  Thus began a pro-
cedural odyssey at the formative stages of this litigation.

By letter dated August 1, 2008, the Company advised Maytag retirees that as of January 1,
2009, it would terminate the Maytag Plan and enroll the Newton retirees in the Whirlpool Plan.[2]

---

[2] The Company did effect the proposed modifications on January 1, 2009, as set out in its
letter to the retirees.

On August 8, 2008, two weeks after the Company filed the Iowa lawsuit, five plaintiffs filed a mirror-image class-action lawsuit seeking to represent the Newton retirees as well as other plaintiffs[3] against the Company and the Whirlpool Plan in the U.S. District Court for the Western District of Michigan (the Michigan lawsuit), with the case assigned to the Honorable Gordon J. Quist (Judge Quist).  Ginter v. Whirlpool Corp., No. 1:08-cv-750 (W.D. Mich. Oct. 2, 2008).  The plaintiffs in the Michigan lawsuit claimed that the Company's plan to modify the retiree benefit schedule violated the 2004 Maytag CBA.  Id.

In the Iowa lawsuit, the Company filed this motion to certify class on August 22, 2008,[4] and  on August 26, 2008, the Company filed a motion to transfer case in the Michigan lawsuit. Judge Quist denied in part the motion to transfer on October 2, 2008, deferring to this Court the application of the first-to-file rule.  On September 3, 2008, the Union filed a motion to dismiss or, in the alternative, to transfer (Transfer Motion), arguing that the first-to-file rule did not apply under the circumstances of this case.[5]  While this Court was considering the Union's Transfer Motion, the plaintiffs in the Michigan lawsuit filed a motion to certify class on September 12, 2008.  Judge Quist held a hearing and allowed supplemental briefings on the Union's Transfer Motion, resulting in the motion being fully submitted and ready for disposition on January 9, 2009.

---

[3] The Michigan lawsuit included two plaintiffs seeking to represent former employees or survivors of employees who worked at a Whirlpool plant in Mt. Sterling, Kentucky, that closed in 1991.

[4] Ruling on this Motion to Certify class was not practicable until issues regarding venue and possible consolidation of the Iowa and Michigan lawsuits resolved.  See Fed. R. Civ. P. 23(c)(1)(A).

[5] The Union, in support of its motion to dismiss, claimed this Court lacked subject matter jurisdiction and argued that the Company was not a proper party because it lacked standing.  The Court rejected the Union's arguments and found that the Company had demonstrated standing sufficient to survive the Union's motion to dismiss.  See Maytag Corp. v. UAW, No. 4:08-cv-00291, 2009 WL 350649, at *5 (S.D. Iowa Feb. 11, 2009).

On January 23, 2009, Judge Quist entered an order certifying a class in the Michigan law-suit that included all of the Newton plant retirees.  Ginter, 2009 WL 198746, at *3.  This Court applied the first-to-file rule and denied the Union's Transfer Motion on February 11, 2009. Maytag Corp., 2009 WL 350649, at *8 (S.D. Iowa Feb. 11, 2009).  The Company responded to this Court's February 11, 2009, Order, by filing a renewed motion to transfer in the Michigan lawsuit on February 12, 2009.

Giving deference to this Court's application of the first-to-file rule, Judge Quist granted the Company's renewed motion to transfer and transferred the Michigan lawsuit to this Court on July 1, 2009.  Ginter, 2009 WL 1911796, at *2.  The plaintiffs in the Michigan lawsuit filed a motion to stay on July 2, 2009, and also filed a petition for writ of mandamus with the Sixth Circuit on July 8, 2009, seeking an order vacating the transfer order.  Judge Quist stayed the transfer of the Michigan case pending the ruling on the writ of mandamus.  On October 7, 2009, the Sixth Circuit denied the petition for writ of mandamus, Ginter et al., No. 09-1981 (6th Cir. Oct. 7, 2009), and Judge Quist lifted the stay.  The Ginter case was transferred to the Southern District of Iowa on October 15, 2009.  As a transferred case without specified relation to this action, the Ginter case was routinely assigned to Chief Judge Robert Pratt.

On October 15, 2009, the Company filed motions to consolidate cases and reassign pending cases in both the Michigan lawsuit and the Iowa lawsuit.  On October 26, 2009, the Michigan lawsuit plaintiffs filed a voluntary motion to dismiss, which the Company resisted. Chief Judge Pratt granted the Michigan lawsuit's plaintiffs' motion to dismiss on December 3, 2009, noting that the court's concerns of potential prejudice to the Company were "allayed to some extent by the assurance of Plaintiffs and Plaintiffs' counsel that they have no intent to refile the Ginter Action in Michigan or anywhere else, so long as the Iowa [lawsuit] proceeds as a class action – a likely eventuality."  Ginter, 671 F. Supp. 2d 1040, 1045 (S.D. Iowa 2009).  Chief Judge Pratt further cautioned that, "[s]hould Plaintiffs or Plaintiffs' counsel refile the Ginter

4

action in any form, separate from the Iowa [lawsuit] and contrary to their stated position in the Reply Brief, the Court authorizes Whirlpool to reapply for an attorney fee award for all costs incurred in the Ginter action." Id. at 1046.  On December 11, 2009, this Court denied the Company's motion to consolidate as moot based on the dismissal of the Michigan lawsuit.

On December 18, 2009, the Company filed a request for judicial notice in support of plaintiffs' motion to certify class, requesting the Court to take judicial notice of various statements regarding the Union's representation of retirees in other lawsuits.

This Court, finding that some of the arguments briefed for the motion to certify class had become stale or moot due to the dismissal of the Michigan lawsuit, entered an Order on January 26, 2010, directing the parties to simultaneously file briefs outlining their current arguments. The parties filed their supplemental briefs on February 25, 2010.  The Company's supplemental brief included the Union as a member of the putative class for the first time, and the Union argued for the first time in its supplemental brief than an actual conflict might exist between the Union and retirees because the Union would be unable to argue that it acted improperly when it negotiated changes to retiree benefits in 2004.  To allow the parties to each respond to these developments and to clarify the concomitant issues, the Court held a hearing on the motion to certify class on May 6, 2009.  The preliminary procedural journey having resolved for now, the pending matters are fully submitted and ready for ruling.[6]  Whatever the underlying agenda, this Court must resolve the pending matters on the unique circumstances demonstrated by the record made herein.

---

[6] In addition to three supplemental briefs, with responses and replies, filed in relation to the motion to certify class, multiple motions for extensions of time along with unusual collateral matters have delayed this Court's class certification ruling.

## II.   DISCUSSION

### A.   Judicial Notice

The Company requests that the Court take judicial notice of statements made in five docu-

ments relating to court proceedings involving the Union in Michigan federal courts.[7]   The

_____

[7] The statements, and their sources, the Company seeks to be judicially noticed are provided by the Company as follows:

Brief of Plaintiff UAW on Opposition to Motion to Intervene, UAW, et al. v. General Motors Corp., No. 05-73991 (E.D. Mich.), Doc. No. 30, p. 9: "UAW has a long and storied history of litigating, and funding litigation, on behalf of its retirees over health care and other benefits."

. . .

Statements by Ms. Julia Clark, Counsel for UAW, in Open Court, Transcript of Fairness Hearing (2/6/2006), UAW, et al. v. General Motors Corp., No. 05-73991 (E.D. Mich.), Doc. No. 1400, pp. 22, 27: "[T]he United Auto Workers has litigated more than twenty cases [] involving other employers that attempted unilaterally to reduce retiree medical benefits . . . .  No one other than the Auto Workers could have delivered . . . protection for the retirees . . . .  And most emphatically, the objectors' counsel could not have done that.  They could not bargain with General Motors to give up active employee's [sic] compensation."

. . .

Brief of Plaintiff UAW in Opposition to Motion to Intervene, UAW, et al. v. Ford Motor Co., No. 05-74730 (E.D. Mich.), Doc. No. 21, p. 11: "[T]he fact is that UAW has a long and storied history of litigating, and funding litigation, on behalf of its retirees to enforce the retiree health care and other benefit rights."

. . .

Statements by Ms. Julia Clark, Counsel for UAW, in Open Court, Transcript of Fairness Hearing (5/31/2006), UAW, et al. v. Ford Motor Co., No. 05-74730 (E.D. Mich.), Doc. No. 905, pp. 21, 25: "The United Auto Workers takes great pride in its long history of negotiating and protecting benefits for its many retirees throughout the country . . . .  The facts show that the Auto Workers has, in fact, represented active employees and retirees very ably over a long period of time."

. . .

Brief of Plaintiff-Appellee United Automobile, Aerospace, and Agricultural Imple-ment Workers of America, UAW, et al. v. General Motors Corp.; UAW, et al. v. Ford Motor Co., Nos. 06-1475/2064 (6th Cir.), p. 16: "As set forth in declarations to the district court, the UAW has a long and proud history of standing up for retirees' rights, both at the bargaining table and in court.  Over the last 50 years, whenever the UAW has won improvements in retiree benefits for future retirees, it has insisted that those improvements in health-care and other benefits also be applied to existing retirees.  And, when companies have not lived up to their obligations to provide

Company asserts that the documents, and the statements therein, constitute party admissions and establish the Union's representation of current retirees[8] and the Union's ability to act as class representative for the current retirees and, thus, are proper for judicial notice under Federal Rule of Evidence 201.  The Union argues that statements made in an appellate brief do not constitute admissions and that the other statements cannot constitute admissions of its ability to represent, and actual representation of, current retirees.

Rule 201 governs the Court's ability to take judicial notice of adjudicative facts only.  Fed. R. Evid. 201(a).  "Adjudicative facts are facts relevant to the case currently before the court." United States v. Gilkerson, 556 F.3d 854, 855 n.2 (8th Cir. 2009); see also Qualley v. Clo-Tex Int'l Inc., 212 F.3d 1123, 1128 (8th Cir. 2000) ("Adjudicative facts are facts that normally go to the jury in a jury case.") (citation and internal quotation marks omitted).  It is mandatory for the Court to take judicial notice if requested and provided with the necessary information.  Fed. R. Evid. 201(d).  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Statements judicially noticed must be admissible evidence. See Am. Prairie Const. Co. v. Hoich, 560 F.3d 780, 797 (8th Cir. 2009).

Separate from the propriety of judicially noticing the documents and statements the Company has submitted, the Court notes that the conclusions that the Company draws from those statements violate Rule 201's "not subject to reasonable dispute" requirement and are not facts

---

retiree benefits, UAW has consistently, in dozens of cases, either litigated on behalf of retirees or funded litigation by others."
Maytag Req. for Jud. Notice 2.

[8] The Company has employed the term "current retirees" to denote the Newton retirees in its briefs for class certification.  The Court uses the terms "Newton retirees" to denote the retirees of Maytag's Newton facility who comprise the putative class in this case.

proper for judicial notice.  Fed. R. Evid. 201(b).  The Company has not shown, and the Court does not find, that it is generally known within the Southern District of Iowa that the Union represents the Newton retirees in this lawsuit, nor is there any source whose accuracy cannot be questioned to which the Court may resort for accurate and ready determination that the Union represents the Newton retirees in this lawsuit.  See Fed. R. Evid. 201(b)(1)-(2).  Indeed, the parties in this case have filed thousands of pages disputing the conclusions the Company seeks to have judicially noticed, and the Court does not find the Union's arguments unreasonable.

Furthermore, the conclusions are non sequiturs, i.e., the statements say nothing about the Newton retirees or about the Union acting as a class representative in this or any other class action lawsuit.  Thus, the Company has not satisfied Rule 201's requirement that a party requesting judicial notice provide the court with the necessary information.  Fed. R. Evid. 201(d).

Without the conclusions the Company draws from the documents and statements, those statements and documents are irrelevant.  See Gilkerson, 556 F.3d at 855 n.2.  The Union does not dispute that it "has fought and will continue to fight for its retirees as [the Company] has argued in [its] briefs, and the UAW has always done that and will continue to do that."  Hr'g Tr. 32, May 6, 2010.  To be sure, judicially noticing the statements would be uncontroversial if the Company did not assert that the statements show the Union's ability to serve as class representative for the Newton retirees.  The past litigation history of the Union on behalf of retirees in general is irrelevant to the current case.  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The question before the Court is not whether the Union has litigated on behalf of retirees, or even whether it can litigate on behalf of retirees; rather, the question is whether the Court can appoint the Union as an unwilling class representative for the Newton retirees in this case – a question the proffered statements and documents do not directly address.

Evidence that the Union has previously litigated *on behalf* of other retirees does not tend to increase the probability that the Union in fact *represents* the Newton retirees in this case.  This is especially true because the Union asserts that it does not represent the Newton retirees and does not want to represent them in this class action suit.  Moreover, the statements do not indicate that the Union was acting as a class representative in either of the Michigan cases from which the statements are taken, leaving the Court with no conclusive evidence tending to establish the Union's ability to act as class representative.  For these reasons, the Court concludes that the statements are irrelevant, and therefore the Court does not take judicial notice.[9]  See Hoich, 560

---

[9] In addition to the relevancy problem, the Court notes that the statements pose admissibility problems that would preclude judicial notice.  See Hoich, 560 F.3d at 797; see also 21B Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5103.3, text at n.87 (2d ed. 2005) (when faced with uncertainty regarding the nature of adjudicative facts, it is prudent for a Court to apply the procedures of Rule 201).

The Company asserts that the statements constitute party admissions.  However, three of the proffered statements were taken from briefs filed in other Courts.  Such statements have been held to be outside the rule that factual allegations in trial court pleadings can constitute admissions, and therefore courts have held in some cases that they are admissible at the court's discretion and in other cases completely inadmissible.  Compare Martel v. Stafford, 992 F.2d 1244, 1248 (1st Cir. 1993) ("[S]tatements contained in briefs submitted by a party's attorney in one case cannot routinely be used in another case as evidentiary admissions of the party."); and Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9, 10 F.3d 700, 716 (10th Cir. 1993) ("[I]n the Tenth Circuit, briefs are not considered part of the record, and statements made in briefs may be considered admissions at the court's discretion."); and Hardy v. Johns-Manville Sales Corp., 851 F.2d 742, 745-46 (5th Cir. 1988) (a party's appellate briefs cannot constitute evidentiary admissions against that party in a different action); and N. Ins. Co. of New York v. Baltimore Bus. Commc'ns, Inc., 68 F. App'x 414, 421 (4th Cir. 2003) (unpublished per curiam decision) (citing with approval Hardy and Martel); and Fields v. Gen. Motors Corp., No. 92-1514, 1993 WL 212479, at *2 (4th Cir. 1993) (unpublished per curiam) (questioning whether statements made in appellate briefs should ever be admitted as evidence); with Kassel v. Gannett Co., Inc. 875 F.2d 935, 951-53 (1st Cir. 1989) (statements in a pro se brief may be used to cross-examine pro se litigant).  See generally 30B Michael H. Graham, Federal Practice and Procedure § 7026 n.10 (4th interim ed. 2006); 191 A.L.R. Fed. 27 §§ 52(a), (b); Handbook of Fed. Ev. § 801:26 n.10.  The statements made in briefs in Michigan district court would not be admissible as a party admission exclusion to hearsay, and the Court would decline to admit them for purposes of judicial notice.  Cf. Fed. R. Evid. 801(d)(2)(A).

As for the other statements made in open court, the Company did not provide the Court with the necessary information to determine whether those statements are testimony in order to

F.3d at 797 (holding that facts not relevant under rule 401 should not be judicially noticed);

Gilkerson, 556 F.3d at 855 n.2 (citing Qualley, 212 F.3d at 1128, for proposition that "[a]djudi-

cative facts are facts relevant to the case currently before the court" and concluding that the

district court erred in taking judicial notice of an irrelevant fact).

## B.  Class Certification

The party seeking class certification "has the burden of showing that the class should be

certified and that the requirements of Rule 23 are met."  Coleman v. Watt, 40 F.3d 255, 258 (8th

Cir. 1994).  As the party seeking class certification, the Company bears the burden of showing

that the Union meets all four requirements of Rule 23(a) and at least one of the requirements of

Rule 23(b).  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); In re St. Jude Med.,

Inc., 425 F.3d 1116, 1119 (8th Cir. 2005).

The prerequisites of Rule 23(a) are as follows:

> (i) 'numerosity'–the class must be 'so numerous that joinder of all members is
> impracticable'; (ii) 'commonality'–the presence of 'questions of law or fact
> common to the class'; (iii) 'typicality'–the claims or defenses of the class
> representative must be 'typical of the claims or defenses of the class'; and
> (iv) a class representative that will 'fairly and adequately protect the interests of
> the class.'

Paxton v. Union Nat'l Bank, 688 F.2d 552, 559 (8th Cir. 1982) (quoting Fed. R. Civ. P. 23(a)).

The Company proposes that the following class be certified under either Rule 23(b)(2)

or 23(b)(1)(A):

> The International Union, United Automobile, Aerospace, and Agricultural
> Implement Workers of America, AFL-CIO, its Local 997, and all persons who:
> (1) are or were employee participants, dependents or participants, or spouses of

---

properly evaluate the statements under Rule 201.  Fed. R. Evid. 201(d) (courts must take judicial
notice of facts if supplied with the necessary information).  In addition to drawing conclusions
from the statements that are impermissible for purposes of judicial notice, the Company seeks to
have the statements noticed to establish the truth of the matters asserted therein, which the Court
cannot do.  See Kushner v. Beverly Enters., Inc., 317 F.3d 820, 832 (8th Cir. 2003); 21B Wright
& Graham, supra at §5106.4, text at n.32.

participants in the Maytag employee benefit plans that provided for retiree medical benefits and (2) who worked at the Newton plants and as to whom the Union had been the participants' collective bargaining representative at the time of and prior to their retirement from Maytag and/or Whirlpool and (3) who retired from Maytag and/or Whirlpool before July 31, 2008, or, in the case of dependents or surviving spouses, who received benefits by virtue of retirees from Maytag and/or Whirlpool on or before July 31, 2008 and (4) who are living and thus affected by Plaintiffs' modification to retiree medical benefits.

First Am. Compl. ¶ 94; Pl.'s Supp. Br. 7.

### 1.   Class Representative Standing

Initially, the Union argued that it lacked standing to serve as an appropriate class representative because it was not part of the class.  The Company's addition of the Union as a putative class member in its Court ordered supplemental brief notwithstanding, the Union's lack of standing argument warrants examination.  The Union argues that it does not have standing to be the class representative in this case because it has not suffered the same injury as the other putative class members.  Thus, the Union argues, as an improper class member it cannot serve as class representative.  At the hearing, the Company countered that the Union satisfies the requirements of Rule 23 and can serve as class representative.

For a party to have "standing to sue as a class representative," it must "possess the same interest and suffer the same injury shared by all members of the class."  Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974).  In its February 11, 2009, Order, the Court found that the Union had an adverse position to the Company's ability to modify the retiree medical benefits plan.  As with the retirees in the Michigan lawsuit, the members of the putative class, the Newton retirees, also oppose the Company's ability to modify the retiree medical benefits plan.  Therefore, the Union possesses the same interest as the putative class in opposing the Company's ability to modify the retiree medical benefits plan.

A determination of the injury in this case requires a disciplined focus on the nature of the present action.  In this declaratory judgment action, the shared injury inquiry overlaps with the

shared interest inquiry.  Both the other putative class members as a group and the Union seek to avoid the same potential injury in this declaratory action – that is the unilateral modification of retiree medical benefits.  Even though the Union states that it has suffered no material harm, the Union would be injured because (1) it was a party to the 2004 Maytag CBA that the Company seeks to modify, and (2) its retiree members would be adversely affected by the modification. See, e.g., Int'l Bhd. of Elec. Workers, AFL-CIO, Local 1 v. GKN Aerospace N. Am., Inc., 431 F.3d 624, 627 n.1 (8th Cir. 2005) (noting that a collective bargaining breach injures parties who have a right to enforce the agreement).  The Court finds that the Union has suffered the same injury and possesses the same interest as the Newton retirees in the action now pending and thus satisfies the initial standing inquiry to determine that it can represent the putative class.

An extension of this initial inquiry is whether the Court can appoint the Union as an involuntary class representative.  The Union argues that it cannot be compelled to be an involuntary class representative.

The parties do not dispute that nothing precludes a Union from serving as a class representative for its members.  See e.g., Clark Equip. Co. v. AIWA, 803 F.2d 878, 880 (6th Cir. 1986); see also Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d 1171, 1174-75 (9th Cir. 1990); Social Servs. Union Local 535 v. Santa Clara County, 609 F.2d 944, 946-47 (9th Cir. 1979).  When a defendant class is involved as in this case, reluctance to act as a class representative is suspect, as strategically motivated.  See Research Corp. v. Pfister Assoc. Growers, Inc., 301 F. Supp. 497, 499 (D.C. Ill. 1969) ("This court weighs the defendants' protestations that they do not 'desire' to represent the entire class, but this is hardly enough to overcome the overwhelming evidence of their ability and intention to challenge the plaintiff's assertions . . . . In any event, this factor of 'desire,' as opposed to ability should not be given more than token weight.); 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1768 (3d ed. 2005).  "The fact that the named representatives are reluctant does not

necessitate the denial of class certification if the court finds that they have the incentive and ability to protect the entire class effectively."  7A Wright, Miller & Kane, supra at § 1770; see also Blake v. Arnett, 663 F.2d 906, 912 (9th Cir. 1981) ("[W]here a defendant class is involved, the court can designate representatives over whom it already has jurisdiction, even if they do not wish to serve.").  The numerous filings in this case show that the Union has the ability to protect the putative class members' interests and an incentive to protect putative class members since the modification of retiree benefits will affect Union members.[10]  This Court has jurisdiction over the Union in this case and is satisfied that it can compel the Union's service as class representative if the requirements of Rule 23 are otherwise met.

### 2.   Numerosity

"Under Rule 23(a), the class must be 'so numerous that joinder of all members is impracticable.'"  Tate v. Weyerhaeuser Co., 723 F.2d 598, 609 (8th Cir. 1983).  No bright line rule regarding numerosity exists in the Eighth Circuit; however, the most obvious factor bearing on this requirement is the number of persons in the proposed class.  Paxton, 688 F.2d at 559.  The Court may also consider other factors including the geographical dispersion in determining whether joinder is impracticable.  Boyd v. Ozark Air Lines, Inc., 568 F.2d 50, 54 (8th Cir. 1977).

In this case, the Company has shown that the proposed class includes approximately 3,314 persons who live in twenty-five states and Puerto Rico.[11]  The Union does not contest that numerosity is satisfied in this case.  Based on the foregoing, the Court finds that the proposed class meets the numerosity requirement of Rule 23(a)(1).

---

[10] The Constitution of the UAW Art. 6 Section 19, adopted in June 2006, provides, "Any member in good standing who is retired, shall be entitled to a 'retired membership status' which, without being required to pay membership dues during the period of such retirement, shall entitle her/him to all of the privileges of membership except the right to vote in [certain enumerated] elections."

[11] Approximately 94 percent of the putative class members are located in Iowa.

### 3.  Commonality

"Rule 23(a)(2) requires that there be common questions of law or fact among the members of the class." Paxton, 688 F.2d at 562.  The commonality requirement "is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation." DeBoer v. Mellon Mortgage Co., 64 F.3d 1171, 1174 (8th Cir. 1995) (citations and internal quotation marks omitted).

The Company submits that the ultimate questions in this case of whether the putative class members' retiree benefits have vested and whether the Company may unilaterally modify those benefits under the CBA are common to all of the members of the proposed class.  The Union agrees that these legal questions are common to all of the proposed class members and are substantially related to the resolution of the litigation.  Therefore, the Court finds that the commonality requirement is satisfied.

### 4.  Typicality

"Rule 23(a)(3) requires that 'the claims or defenses of the representative parties (be) typical of the claims or defenses of the class.'" Paxton, 688 F.2d at 561.  Typicality is "considered to be satisfied 'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'" Id. at 561-62 (quoting Wright & Miller, Federal Practice and Procedure § 1764 n.21.1 (Supp. 1982)). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." DeBoer, 64 F.3d at 1174.

The claims and defenses of the parties in this case stem from the Company's assertion of a unilateral right to modify the Newton retirees' benefits.  The Union concedes that the only legal or remedial theory pending before the Court is an action for declaratory judgment.  Apart from the Union's defense of "no case or controversy," which was already disposed of in the Court's February 11, 2009, Order, the defenses of vested rights and breach of the CBA are typical to the

Union and other putative class members.  Thus, as the case is currently postured, the typicality requirement is satisfied.  See Paxton, 688 F.2d at 561-62.

Despite the presently-existing typicality in this case, the Union argues that as class representative it may be obligated to bring claims for money damages on behalf of the other putative class members, while the Union itself has no claimed damages.  This is so, the Union argues, because the Company has already modified retiree benefits, and retirees are now incurring higher costs, which the retirees would be entitled to recover if the Court rules that the Company did not have the right to modify the plan.  The Company counters that the Union is reimbursing at least some of the putative class members for the higher costs they incur under the modified benefits plan; hence, the Union would have its own claims for damages.  The Union responds that its damages would only be derivative, and the primary claim for damages still belongs to the individual retirees.

The Union's arguments are based on hypothetical facts that are typically eschewed by courts.  See KCCP Trust v. City of N. Kansas City, 432 F.3d 897, 899 (8th Cir. 2005) ("Article III limits the federal courts to deciding 'Cases' and 'Controversies' and this prohibits us from issuing advisory opinions.  'One kind of advisory opinion is an opinion advising what the law would be upon a hypothetical state of facts.'" (quoting Pub. Water Supply Dist. No. 8 v. City of Kearney, 401 F.3d 930, 932 (8th Cir. 2005))).  However, Rule 23 requires this Court to decide whether the necessary, as opposed to merely possible, claims and defenses of the parties are similar, even for those putative class members who have not appeared.[12]

Damages are self-evidently not the primary remedy in an action for declaratory judgment.  28 U.S.C. § 2201(a).  Yet, a court *may* award damages as "further necessary or proper relief based on a declaratory judgement."  28 U.S.C. § 2202.  Since an award of damages is not

---

[12] The Court also notes that the putative class members have abandoned their damages claim in the Michigan lawsuit by voluntarily dismissing that lawsuit after transfer to this Court.

required in a declaratory judgment action, typicality would only be destroyed if counterclaims for retirees' damages would be compulsory and the Union had no possible damages claim.  As for the first condition, Rule 13 requires that "[a] pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party."  Fed. R. Civ. P. 13(a)(1).  Courts have held that Rule 13 is inapplicable in class action suits.  See Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1259 n.14 (11th Cir. 2003) ("Rule 13, however, is inapplicable in class action suits, because 'absent class members are not opposing or litigating adversaries for purposes of Rule 13.'" (quoting Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc., 238 F. Supp. 2d 963, 967 (S.D. Ohio 2003))).

> Rule 13 expressly is applicable only to opposing parties.  A court may properly conclude that absent class members are not opposing or litigating adversaries for purposes of Rule 13, and therefore Rule 13 is inapplicable in a class context. Because compulsory counterclaims can only be potentially involved when Rule 13 applies, if absent class members are not opposing parties within the meaning of the rule, it follows that any counterclaims that may be permitted in a class action are not governed by Rule 13 and are purely discretionary with the court.

2 William B. Rubenstein, Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 4:34 (4th ed. 2009) (internal citations omitted).  The Court agrees with the rationale set forth by the Eleventh Circuit in Allapattah Servs., Inc. v. Exxon Corp., and concludes that any damages the parties may eventually be entitled to can be awarded by the Court upon entry of judgment in the case.  See Allapattah, 333 F.3d at 1259 (citing several federal cases and agreeing that "the appropriate time for a class action defendant to raise affirmative defenses and set-off claims is during the damages phase of the action"); see also, Ginter, 2009 WL 198746, at *8.  Because an award of damages is already discretionary in this case and the Union would not be obligated to bring damages counterclaims on behalf of the putative class members, the Court's typicality analysis is not impacted.

Therefore, the claims and defenses are typical for all of the parties in this case as currently

postured, and the "fairly easily met" burden for typicality has been satisfied.  DeBoer, 64 F.3d at 1174.

### 5.   Adequacy

In its initial briefs, the Company asserts that the Union is a proper representative of its

members, has no conflicts of interest that would preclude representation, and will vigorously

defend the other class members.  The Union argues that it is not an appropriate class representa-

tive under the fair and adequate representation requirements of Rule 23(a)(4).  Specifically, the

Union claims that it cannot provide adequate representation to the proposed class members

because those class members have not consented to the Union's representation.  The Company

argues that (1) consent is not required for the Union to be named class representative and

(2) even if consent is required, the proposed class members have consented because (i) consent is

implied, and (ii) the class members have consented to the Union's representation by actual and

apparent agency.  The Union counters that any consent to Union representation that putative

class members may have given does not apply in this particular case because of the unique status

of retirees vis-à-vis collective bargaining agreements.

Rule 23 seeks to uncover conflicts of interest.  Amchem, 521 U.S. at 625-26.  "The focus

of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the mem-

bers of the class, and (2) whether the class representatives will vigorously prosecute the interests

of the class through qualified counsel."  Paxton, 688 F.2d at 562-63.  Conflicts of interest may

arise within a Union regarding representation of both active employees and retirees.  See Allied

Chem. & Alkali Workers of Am. v. Pittsburgh Plate Glass Co., 404 U.S. 157, 173 (1971).

There is no dispute that the Union may represent a class in general; however, the Union

argues that it cannot be compelled to represent class members who have not consented to its

representation.  On the face of Rule 23, class members' consent is not a prerequisite for "one or

more members of a class [to] sue or be sued as representative parties."  Fed. R. Civ. P. 23(a).

Rather, a class representative may sue or be sued only if the requirements of Rule 23(a)(1)-(4) are met – wherein consent is not a requirement.  The Rule does not give the Court an option to supplement its prerequisites with a consent requirement.  In contrast, Rule 23 handles unwilling class members by allowing them to opt out of classes certified under Rule 23(b)(3).  Fed. R. Civ. P. 23(c)(2)(B)(v).  However, as discussed, *infra* Part II.B.7, this class action does not proceed under Rule 23(b)(3); therefore, class members do not have the option to be excluded from the class if the requirements of Rule 23(a) are met.  Consequently, class members are not required to consent to the class representative under Rule 23(a).

Whether class members must consent to an actual or theoretical conflict of interest, though,  presents a distinct question from whether class members must consent to a class representative.  As noted above, the Court can appoint an unwilling party in a defendant class to serve as class representative.  But, the Court must determine whether appointing the Union as class representative gives rise to a prohibited Rule 23(a)(4) conflict of interest that might require class members to consent to such a conflict.  Following the inquiry set out in Paxton, the Union has a common interest with the putative class members in securing favorable health care benefits as evidenced by the collective bargaining it engaged in to secure those benefits initially.  Paxton, 688 F.2d at 562-63.  The Union sowed seeds of doubt on the question of vigorous prosecution by declaring that it would refuse to pay its lawyers for any work done on behalf of the class repre-sentatives because the class members were already well represented in the Michigan lawsuit.  Id. The Court need not determine if this seemingly incongruous warning is real or fictional in a continuing effort to site this case in a different judicial circuit.  The Union's argument here falls on barren ground due to the dismissal of the Michigan lawsuit, after transfer here, coupled with the Union's demonstrated ability to vigorously prosecute its own interests in this case – interests that are held in common with and typical to the Union and the other putative class members.

18

Next, however, the Court must determine whether the common interest, which would render Union representation of the Newton retirees both adequate and appropriate, is undermined by a competing conflict of interest between the Union and retirees in this case. As a conflict of interest may arise when a Union represents retired and active employees, see Allied Chemical, 404 U.S. at 173, the Court must determine whether there is an actual conflict in this case that would disqualify the Union from being sued as class representative before deciding whether consent to any such conflict is necessary.

The Union argues that there is both an actual conflict over allocation of resources between active employees' interests and retirees' interests, and an inherent, inescapable conflict that arises when Unions represent retirees that can only be overcome by the retirees' consent to the conflict. Turning to the "inherent conflict" argument first, the Union argues that the Supreme Court in Allied Chemical and the Eighth Circuit in Anderson v. Alpha Portland Industries, Inc., 727 F.2d 177 (Anderson I) (8th Cir. 1984), and Anderson v. Alpha Portland Industries, Inc., 752 F.2d 1293 (Anderson II) (8th Cir. 1985) (en banc), held that the Court need not inquire into the existence of an actual conflict because there is an inherent and inescapable conflict present when a Union represents retirees.

The Union's reliance on Allied Chemical is misplaced. In Allied Chemical, a company refused to bargain with a union over modifications to retiree benefits after the enactment of Medicare. Allied Chem., 404 U.S. at 160-61. In response to the company's refusal to bargain and unilateral alteration of retiree medical benefits, the union filed unfair labor practice charges. Id. at 162. The Supreme Court held that retiree benefits are not mandatory subjects of collective bargaining; thus, unilateral modification of those benefits does not constitute an unfair labor practice under the National Labor Relations Act (NLRA). Id. at 159-60, 188. In reaching its decision, the Court considered whether retirees should be included in the collective bargaining unit, thereby coming under the ambit of the NLRA. Id. at 166-83. The Court held that retirees

19

were not employees within the meaning of the collective bargaining obligations of the NLRA,

thus they could not be members of the collective bargaining unit.  Id. at 172.  The Court further

held that "retirees could not properly be joined with the active employees in the unit that the

Union represents."  Id.  The Court was concerned with minority groups becoming submerged in

overly large bargaining units not of their choosing and highlighted conflict of interest concerns

as follows:

> Here, even if, as the Board found, active and retired employees have a common
> concern in assuring that the latter's benefits remain adequate, they plainly do not
> share a community of interests broad enough to justify inclusion of the retirees
> in the bargaining unit.  Pensioners' interests extend only to retirement benefits,
> to the exclusion of wage rates, hours, working conditions, and all other terms of
> active employment.  Incorporation of such a limited-purpose constituency in the
> bargaining unit would create the *potential* for severe internal conflicts that
> would impair the unit's ability to function and would disrupt the processes of
> collective bargaining.  Moreover, the risk cannot be overlooked that union
> representatives *on occasion might* see fit to bargain for improved wages or other
> conditions favoring active employees at the expense of retirees' benefits.

Id. at 173 (emphasis added).

Contrary to the Union's argument, this dicta does not support the conclusion of an inherent

and inescapable conflict obviating the need for a court to examine the unique facts in each case

to determine whether there is an actual conflict.  Also distinguishable from Allied Chemical, this

Court is not deciding whether the Newton retirees are included in the Union's collective bar-

gaining unit; rather, the Court is deciding whether the Union can adequately represent the

retirees interests as class representative.

Similarly, neither Anderson I nor Anderson II holds that there is an inherent and

inescapable conflict when a union represents retirees in a class action.  In Anderson I, a group of

retirees brought an action under the Labor Management Relations Act (LMRA) and Employee

Retirement Income Security Act (ERISA) against their former employer to recover retirement

benefits that the employer had cut.  Anderson I, 727 F.2d at 179.  The district court dismissed the

suit because the retirees had failed to exhaust contractual remedies, which included arbitration with the Union as the retirees' exclusive representative.  Id.  On appeal, the court concluded that because the contractual remedies were controlled by the union, which owed no duty of fair representation to the retirees, the retirees qualified for an exception to the LMRA's exhaustion requirement, noting the concern that a union which owed retirees no duty of fair representation, but nonetheless controlled the contractual remedy, would possibly render the retirees unprotected and the retirees' efforts to address their claim futile due to inadequate representation by the union in binding arbitration.  Id. at 180-81, 183.  Anderson II held that without a presumption in favor of arbitrability, the specific contract language in question did not require the retirees to exhaust administrative remedies before asserting their rights in federal court.  Anderson II, 752 F.2d at 1298.  Both Anderson I and Anderson II are distinguishable from the facts of this case because those courts found that a conflict of interest exists when a union represents retirees in collective bargaining and contract administration, but neither dealt with the question of whether an inherent conflict of interest of the type Rule 23(a)(4) seeks to avoid exists when a union represents retirees in a class action.[13]

A finding that an inherent and inescapable conflict of interest does not exist when a union represents a retiree class is supported by the decision in GKN.  GKN involved a union wishing to

---

[13] In a footnote, Anderson II states, "In our panel opinion we underscored the inherent conflicts in relegating retirees to an exclusive remedy of arbitration controlled by a union which owes them no duty of fair representation."  Anderson II, 752 F.2d at 1299 n.11.  Later, in the body of the decision, the court noted that ERISA policy declared that ERISA plan participants should have ready access to the federal courts.  Reading those portions of the opinion together, the Court concludes that an "inherent" conflict arises when a party is seeking to determine the rights of retirees in a forum contrary to a stated policy.

Here, there is no policy that declares that Iowa federal court is an improper forum vis-a-vis Michigan federal court.  In the instant action, the Union and the retirees, as evidenced by the Michigan lawsuit, do not oppose the federal courts as the proper forum for determining the putative class members' rights; rather, the Union merely opposes this Court's determination of those rights, while the order dismissing the Michigan lawsuit noted that the retirees preferred a determination of their rights in this lawsuit as long as this lawsuit proceeded as a class action.

compel arbitration on behalf of retirees and considered whether a union has standing to litigate a potential retiree grievance, answering in the affirmative. GKN, 431 F.3d at 627 n.1 (8th Cir. 2005); see also Commc'ns Workers of Am. & its Local 7270 v. Frontier Commc'ns of Minn., Inc., No 08-650, 2008 WL 3896153 (D. Minn. Aug. 19, 2008) (reaching the same conclusion). The court reasoned that a union suffers an injury-in-fact deriving from its right to enforce the agreement that it negotiated. GKN, 431 F.3d at 627 n.1. Thus, if a union has standing to compel a company to arbitrate retiree grievances pursuant to an agreement entered into by the union and the company only, it does not follow in this case that an inescapable conflict exists preventing the Union from representing the retirees in a class action lawsuit over the terms of a CBA entered into by the Union and the Company. Whether the union is seeking vindication of the retirees' rights or defending against an action adverse to the retirees makes no difference in determining whether an *inherent* conflict of interest exists between retirees and the union. Therefore, under the circumstances of this case, the better inquiry is whether an actual conflict of interest exists. And if, as discussed below, there is no actual conflict of interest, it turns reason on its head to declare that there is an inherent and inescapable conflict of interest nonetheless.

The Union concedes that the only *potential* conflict of interest in this case concerns the allocation of resources between retirees and active employees and maintains that the allocation of resources in this case presents not only a potential, but an actual, conflict.[14] To be sure, the specific conflict of interest analysis in class certification inquiries requires that the Union have a common interest with the retirees and will vigorously prosecute the interests of the class as a whole. Paxton, 688 F.2d at 562-63. In this case, the Court has already held that the Union

---

[14] At the hearing, the Court inquired of the Union's counsel, "Okay. So your argument with regard to conflict, based upon what is before me today is an argument that has to do with the expenditure of resources on behalf of one group of union people as opposed to another group?" Mr. Seltzer: "Basically, yes." Hr'g Tr. 33-34. This concession jettisoned the Union's argument that a conflict would arise because it would have to make inconsistent arguments over whether the Union improperly bargained away retiree benefits previously.

suffered an injury-in-fact.  Therefore, as a proper defendant in this case, the Union is already under an obligation to allocate resources to this lawsuit.  Similarly, the commonality and typicality inquiries show that the Union and retirees both seek a declaration that the Company does not have the right to unilaterally modify retiree medical benefits.

The Union has failed to show how its representation of the retirees would materially change its allocation of resources.  Common interest with other class members does not change merely because the Union declares that its interests do not align with the retirees' interest.  See id.  Furthermore, non-representative class members are passive in a class action and will not require additional resources in this declaratory action because the Union vigorously prosecuting its own interests in this declaratory judgment case will, ipso facto, provide vigorous prosecution of the putative class members' interests.  Thus, there is no actual conflict, and, without a conflict, there is nothing requiring the putative class members to consent.

Accordingly, the Court finds no conflict of interest that might require consent, either inherent or actual, exists between the Union and the putative class members; the Union has common interests with the putative class members; and the Union has the ability to vigorously prosecute the interests of the class as a whole.  Therefore, the requirements of Rule 23(a)(4) are satisfied.

### a.   Consent to Representation

Assuming *arguendo* that class members' consents were required for the Union to be sued as class representative, the Court finds that the retirees have consented to Union representation. The Company argues that the Union's constitution is clear that the retirees are members of the Union who have consented to Union representation.  The Union counters that retirees are not full members of the Union, nor are they bargaining unit members, hence the putative class members' connection to the Union is too attenuated for the Union to act as their class representative.

23

The Constitution of the UAW (UAW Constitution) Art. 6 Section 19, adopted in June 2006 provides as follows:

> Any member in good standing who is retired, shall be entitled to a 'retired membership status' which, without being required to pay membership dues during the period of such retirement, *shall entitle her/him to all of the privileges of membership* except the right to vote in [certain enumerated] elections."

1st Supp. App'x Ex. A (emphasis added).  The language denotes a distinction in membership status, but the Union has not pointed to any case which found "full" membership status to be a requirement to Union representation.  Indeed, the same language affords retirees all of the privileges of membership, among which Art. 6 Section 16 allows the Union "exclusively to act as the member's agent to represent and bind her/him in the presentation, prosecution, adjustment, and settlement of all grievances, complaints, or disputes of any kind or character arising out of the employer-employee relationship."  1st Supp. App'x Ex. A.

Furthermore, when the retirees were Maytag employees and "full" Union members, they consented to Union representation for matters arising out of their employee-employer relationship with Maytag.  As such, unions may represent their members in class actions.  See Cal. Rural Legal Assistance, Inc., 917 F.2d at 1174-75; Clark Equip. Co., 803 F.2d at 880.  The Union indicated at the hearing and in its brief opposing summary judgment that its contention on the merits of this case is that the retiree benefits vested.  Taking that as the Union's position then, this dispute arises out of the then-existing employee-employer relationship, and disposition of this matter does not depend upon the current relationship between the Union and the Newton retirees but upon the relationship wherein the putative class members expressly consented to Union representation.[15]

---

[15] In a letter dated September 17, 2008, sent by the Union to the Newton retirees, the Union declares that it will use its resources to fight the Company's unilateral modification of benefits and that the Union supported the filing of the Michigan lawsuit.  2d Supp. App'x Ex. B.  Based on this letter, the Company alleges that the Union is guilty of maintenance.  The Union argues that maintenance is an obsolete legal theory and that the letter only expresses support for retirees

### b.   Consent to Conflict

Also assuming *arguendo* that a conflict of interest exists, it would not bar class certification under Rule 23(a)(4) because the retirees have consented to this class action by dismissing the Michigan lawsuit in favor of this lawsuit, and it is undisputed that the putative class members may consent to a conflict of interest.  The Union argues that a conflict of interest exists between the Union and the Newton retirees and that the Newton retirees, rather than consenting, affirmatively oppose the Union's representation in this lawsuit.  The retirees' more recent conduct in this Court belies this assertion and leaves the argument to the previously determined forum dispute.

The Michigan lawsuit plaintiffs asserted that they "want[ed] to set the record straight: Plaintiffs' counsel does not have the authority, and Plaintiffs have no intention, to re-file this case in Michigan or anywhere else with these or any other class members *as long as the Iowa declaratory judgment action proceeds as a class action*."  Ginter, 671 F. Supp. 2d at 1044-45 (emphasis added).  This motion for class certification had been long pending when the Michigan case was dismissed, and the record demonstrates that the Michigan plaintiffs were fully aware that they were part of the putative class in this case.  Thus, in the context of collateral litigation

---

rather than a promise of representation.  Black's Law Dictionary 1039 (9th ed. 2009), defines maintenance as "[i]mproper assistance in prosecuting or defending a lawsuit given to a litigant by someone who has no bona fide interest in the case; meddling in someone else's litigation." There is no evidence before the Court that shows that the Union paid for the Michigan lawsuit without a legal interest in that case.  The Union has some interest in both cases that is aligned with the retirees' interest – it is merely arguing that its interest is not perfectly aligned with the retirees' interest in this case, such that it should not serve as class representative or class counsel.

The record also includes an internal Union decision regarding the Union's representation of retirees in negotiating benefits.  Besides distinguishing the decision, the Union argues that the Company's supplement should be stricken since the Company did not file for leave of the Court to file the supplement.  Local Rule 7(d)(8) provides for a motion to supplement a motion but does not require one.  Thus, the Court has considered the Company's arguments made therein as well as in the Union's resistance thereto.  The decision does not indicate that the Union was the retirees' exclusive representative, nor would such a result affect the Court's holding here.

pending in this Court after transfer, the named representatives in the Michigan lawsuit affirma-tively consented to a conflict of interest.

While on the current record the Court cannot ascertain the absent class members' opposi-tion to this lawsuit, the record does indicate that the absent class members' interests were ade-quately represented when the transferred Michigan lawsuit was dismissed in favor of this lawsuit.  At one point, the Union had collected statements from some of the putative class members opposing Union representation in this lawsuit because they were already adequately represented in the Michigan lawsuit.  While, in light of the dismissal of the Michigan lawsuit, the statements are moot for their stated purpose of opposing Union representation in this lawsuit, they do evidence the absent class members' consent to decisions made by the named representa-tives in the Michigan lawsuit.  When the class was certified in the Michigan lawsuit, the class representatives were under the obligation to adequately and vigorously represent the interests of the whole class.  Fed. R. Civ. P. 23(g)(4).  Chief Judge Pratt also noted the court's duty to pro-tect the interests of the absent class members in granting the motion to dismiss.  Ginter, 671 F. Supp. 2d at 1045-46.  Thus, the Court finds that the interests of the absent class members were adequately represented in the Michigan lawsuit, and, as the Court has found the voluntary dismissal in that case to be evidence of the named representatives' consent to a conflict, the Court will give the voluntary dismissal the same effect as to the absent class members.

### 6.  Class Counsel

The Union argues that Mr. Seltzer and local counsel Mr. Hedberg are not appropriate class counsel under Rule 23(g).  The Company argues that Mr. Seltzer and Mr. Hedberg have both the means and the ability to vigorously defend the class members.

In appointing class counsel, Rule 23(g) requires the Court to consider

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex liti-gation, and the types of claims asserted in the action; (iii) counsel's knowledge

of the applicable law; and (iv) the resources that counsel will commit to repre-
senting the class.

Fed. R. Civ. P. 23(g)(1)(A).  The Court may also "consider any other matter pertinent to
counsel's ability to fairly and adequately represent the interests of the class" and otherwise
request information from counsel.  Fed. R. Civ. P. 23(g)(1)(B), (C); 23(g)(4).

The Union avers that Mr. Hedberg has little experience in complex matters and class
actions and has few resources to commit to being class counsel.  Mr. Hedberg has been involved
in this litigation from its inception in identifying, investigating, and opposing the Company's
position.  Mr. Hedberg is experienced in labor law and in representing labor unions.  Addition-
ally, the Union selected Mr. Hedberg to represent the Union in this action and many of the class
issues that are likely to arise have already been litigated in the Michigan lawsuit, which reduces
the resources necessary to litigate this lawsuit.  Accordingly, the Court considers Mr. Hedberg
appropriate class counsel for the putative class in this case.

The Union also argues that Mr. Seltzer is inappropriate class counsel, and, because it will
refuse to pay him for any work done specifically on behalf of the Newton retirees, he will have
too few resources to commit to representing the class.  Like Mr. Hedberg, Mr. Seltzer has also
been involved since the beginning of this case identifying, investigating, and opposing the Com-
pany's position.  The Union admits that Mr. Seltzer has previously been appointed class counsel
in Boeing et al. v. UAW, No. 1:06-cv-04997 (N.D. Ill.),[16] and has extensive experience litigating
ERISA and labor actions.  The Union attempts to distinguish the case in which Mr. Seltzer was
appointed class counsel on the grounds that Mr. Seltzer only represented the retirees in a much
less complicated case than this one.  The Union admits, however, that the Boeing case became
much more complicated after the class was certified.

---

[16] Mayfield et al. v. The Boeing Co., 3:06-cv-0083 (M.D. Tenn.), was transferred to the
Northern District of Illinois and consolidated with Boeing in a procedural posture not unlike the
instant case.

Boeing was substantially similar to the present case in that the retirees Mr. Seltzer represented opposed Boeing's unilateral modification of their medical benefits.  Mr. Seltzer's experience in representing the retirees, rather than the Union, in Boeing makes his appointment as class representative in this case even more appropriate.  Based upon this experience, Mr. Seltzer has manifest capability in handling class actions and the types of claims asserted in this action and is appropriate class counsel in this lawsuit.

Further, the filings in this action to date demonstrate Mr. Hedberg's and Mr. Seltzer's ability to handle complex matters adequately.  They have already committed substantial resources in filing and asking for reconsideration of a motion to dismiss, opposing class certification, and opposing summary judgment.  They have engaged in extensive discovery and both claim extensive experience representing labor unions either personally or through their firms.  As the Court has found that the Union is a proper defendant in this action, Mr. Hedberg and Mr. Seltzer will be required to defend against the Company's claims to defeat the Company's attempts to unilaterally modify benefits regardless of their service as class counsel.  The Court does not seriously anticipate the Union's threat to withhold compensation for work done as class counsel, given the Union's obligations to retirees and its own similar interests herein, but may revisit the issue should that unlikely event occur.

Additionally, the Union argues that it would be prejudicial to appoint the Union's counsel as class counsel at this stage of the litigation because discovery has closed and the Union's counsel only engaged in discovery on behalf of the Union rather than the class as a whole.  It is unclear how the Union's discovery would have differed if they were acting on behalf of the class rather than only the Union, especially because damages claims are not before the Court, and were voluntarily dismissed by the Newton retirees in the Michigan lawsuit.  If this Court finds that the Company did not have the right to modify retiree benefits, the Court will deal with any damages claims at a later stage in this class action.  See Allapattah, 333 F.3d at 1259 (citing

cases that state that damages claims in declaratory class actions can be submitted and handled after liability has been established).

### 7. Type of Class

The Company seeks class certification under either Rule 23(b)(2) or Rule 23(b)(1)(A). The Union does not contest certification under either provision but seeks an order requiring notice under Rule 23(c)(2)(A) that would give the retirees the option to be excluded from this class action.

The Union's request is contrary not only to Eighth Circuit precedent, but to Rule 23 itself, together with the Union's stated position acknowledging the propriety of certifying a class under either Rule 23(b)(2) or Rule 23(b)(1)(A). "When either subsection (b)(1) or (b)(2) is applicable[], (b)(3) should not be used, so as to avoid unnecessary inconsistencies and compromises in future litigation." DeBoer, 64 F.3d at 1175 (citing Reynolds v. Nat'l Football League, 584 F.2d 280, 284 (8th Cir. 1978), and noting that class members should only be given the option to opt-out of class actions if the action can only be maintained under Rule 23(b)(3)). Rule 23(b) generally provides for various types of classes, but only subsection (b)(3) provides members of a class with the option to be excluded from the class. See 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1787, text at n.13 (3d ed. 2005) ("[U]nder [Rule 23], the privilege of being excluded from the judgment only exists in actions brought under Rule 23(b)(3)). The stated purposes of a class action under subsection (b)(1)(A), to avoid inconsistent adjudications with respect to individual class members, and under subsection (b)(2), to declare injunctive relief appropriate to the class as a whole, would be defeated if the Court were to recognize a right to be excluded. The Court takes into consideration that the Union's request is also contrary to the Newton retirees' desire to dismiss the Michigan lawsuit, with its request for damages, if this action progresses as a class action. See Elizabeth M. v. Montenez, 458 F.3d 779, 786-87 (8th Cir. 2006) (district court abused its discretion by not

29

considering the impact on class members' damages claims when certifying a class without a right to exclusion).  Thus, the Court will not require notification that a class member has a right to be excluded from the class because the class members do not have such a right under either Rule 23(b)(2) or Rule 23(b)(1)(A).[17]

## III.  CONCLUSION

Based on the foregoing, the Union is the most appropriate class representative in this declaratory action.  Therefore, Plaintiffs' Motion to Certify Class (Clerk's No. 18) must be **granted**.  Plaintiffs' Motion for Judicial Notice (Clerk's No. 133) must be **denied**.  The Court will issue a separate Certification Order pursuant to Rule 23(c) consistent with this Order.

**IT IS SO ORDERED.**

Dated this 22nd day of June, 2010.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT

---

[17] Even if the Newton retirees had the right to opt out, they would not be allowed to participate in another class action lawsuit.  In re Baycol Prods. Litig., 593 F.3d 716, 725 (8th Cir. 2010) (noting that "a person who opts out [of a certified class] receives the right to go it alone, not to launch a competing class action" (quoting In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig., 333 F.3d 763, 769 (7th Cir. 2003) (alteration in original))).